# EXHIBIT C

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WARREN GRANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:08-CV-350 |
| ) | (VARLAN/SHIRLEY) |
| V. ) | |
| ) | |
| SHAW ENVIRONMENTAL, INC., ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral of the District Judge [Doc. 97], to address the Plaintiff's request for an award of attorneys' fees and expenses in this case. The parties appeared before the undersigned on November 27, 2012, to address the Plaintiff's request for an award of attorneys' fees and expenses. Attorney Robert Bigelow was present representing the Plaintiff Warren Grant, and Attorney William Rutchow was present representing the Defendant Shaw Environmental, Inc., ("Shaw").

The Court has considered the parties' written submissions and oral arguments. For the reasons stated herein, the Court will **RECOMMEND** that the request for an award of fees and expenses be **GRANTED IN PART** and **DENIED IN PART**, and that Mr. Grant be awarded $80,499.14, representing the attorneys' fees and $5,706.01 in costs for a total award of **$86,205.15**.

## I. BACKGROUND

On August 29, 2008, Plaintiff John Tsouris filed this action seeking redress for unlawful violations of § 216(b) of the Fair Labor Standards Act ("FLSA"), on behalf of himself and others who are similarly situated. [Doc. 1]. On September 22, 2008, Plaintiff Warren D. Grant filed a Consent to Become Party Plaintiff [Doc. 6-1].

The following year, the parties presented a stipulation to stay the case to the Court, and on May 15, 2009, the Honorable Thomas A. Varlan, United States District Judge, signed the Stipulation for Stay and Tolling Agreement. It stayed the case pending settlement negotiations. On March 25, 2011, Judge Varlan entered an Order [Doc. 24], lifting the stay and setting this case for trial on August 8, 2011. On July 14, 2011, the Court dismissed John Tsouris, the then lead plaintiff, and gave leave for Mr. Grant to file an amended complaint with Mr. Grant as the named Plaintiff. [Doc. 38]. The bench trial of this matter was completed in one day on August 8, 2011.

On January 17, 2012, the Court issued his Memorandum, Opinion, and Order finding in favor of Mr. Grant. The Court found that Mr. Grant had been misclassified as being exempt from the overtime pay requirement. [Doc. 15-18]. The Court further found that the fluctuating workweek provision contained in 29 C.F.R. § 778.114(a), did not apply to this case, because Shaw did "not met their burden of demonstrating a clear mutual understanding between the parties that [Mr. Grant] was to be paid a fixed weekly salary regardless of the number of hours he worked per week." [Doc. 81 at 23].

The Court determined that Mr. Grant was "entitled to unpaid overtime wages for the two years prior to the filing of his complaint" and directed that Mr. Grant submit a statement of the appropriate amount of damages. [Doc. 81 at 33]. Mr. Grant filed his Wage Calculation

2

Submission [Doc. 82] on January 24, 2012. On March 1, 2012, the undersigned issued a Report and Recommendation [Doc. 87] recommending that Mr. Grant be awarded $6,916.20, representing the overtime compensation owed to him with prejudgment interest. This recommendation was adopted by Judge Varlan, [Doc. 89], and on March 28, 2012, the Clerk of Court entered Judgment [Doc. 90], in favor of Mr. Grant in the amount of $6,916.20.

Thereafter, Mr. Grant filed his Statement of Fees and Costs [Doc. 92], moving the Court to award $123,163.50 in attorneys' fees, plus 3% of the total fees awarded for the time associated with Plaintiff's Motion, and costs of $8,251.38. In total, Plaintiff requested an award of $135,109.79 in fees and expenses. Shaw responded in opposition, [Doc. 93], and Mr. Grant filed a final reply in support of his request, [Doc. 96]. Mr. Grant, however, agreed to deduct $25,088.53 from the amount of fees he initially requested in response to objections lodged by Shaw. As noted above, the parties presented oral arguments to the Court on November 27, 2012, and filed supplemental briefs in January 2013.

The Court finds the request for fees and expenses is now ripe for adjudication.

## II. POSITIONS OF THE PARTIES

Mr. Grant initially requested $123,163.50 in attorneys' fees, plus 3% of the total fees awarded for the time associated with Plaintiff's Motion. Thereafter, Mr. Grant agreed to reduce the fees requested by $25,088.53. Thus, at the hearing on this matter, counsel for Mr. Grant represented that the total fee request before the Court was $98,074.00.[1]

Mr. Grant has two overarching arguments for awarding the requested fees and costs. In support of the seemingly large award requested, he posits: (1) this case was prepared for trial in

---

[1] At the hearing, counsel did not represent that an additional 3% would be added to this amount for compensating the time spent preparing the petition. Thus, the undersigned has treated the $98,074.00 as the "final number" for evaluation.

3

an abbreviated fashion and in the month preceding trial, a significant amount of time was spent "dealing with discovery" and (2) Shaw strenuously fought the FLSA claims despite the relatively low amount of overtime at issue. In his filings, Mr. Grant focuses on the second of these arguments, maintaining that the Defendant attempted to re-litigate the Court's decision to award the Plaintiff compensation. Mr. Grant contends that, despite Judge Varlan's decision to the contrary, counsel for the Defendant argued to the undersigned that Mr. Grant was not entitled to prejudgment interest at all. [Doc. 92 at 5].

Mr. Grant also discusses the classic lodestar calculation and related considerations in his Statement of Fees and Costs [Doc. 92 at 6-7]. Mr. Grant acknowledges that the hourly rate awarded should compensate in a manner sufficient to attract competent counsel but not so great that it produces a windfall for lawyers. [Doc 6 at 7 (citing Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004))]. Mr. Grant requests compensation at seemingly high rates, including compensation: for Robert Bigelow, an attorney practicing since 2002, at $250 per hour; M. Reid Estes, Jr., an attorney practicing since 1980, at $440 per hour; Julie Hamner Johnston, an attorney practicing since 1997, at $250 per hour; and Pam Pardee, an experienced paralegal, at $125 per hour. Excluding the paralegal time, the average of the hourly rates – weighted to reflect the number of hours charged at a given rate – is $257.60.[2] In an affidavit [Doc. 92-1], Mr. Bigelow submits that he is aware of the rates for comparable litigation experience in Knoxville and Nashville and that these rates are "appropriate market rate[s]."

In addition, Mr. Grant initially sought $8,251.38 in costs. The initial request included costs like copies and transcripts of depositions, which are generally submitted to the Clerk of

---

[2] This weighted average is derived from the original fee petition. Mr. Grant did not provide the Court with a revised hourly billing statement after his agreed reductions. The Court has, however, reviewed the agreed reductions, and finds that they reflect across the board reductions that are unlikely to change the average rate.

4

Court, pursuant to 28 U.S.C. § 1920. The Plaintiff also requested compensation for costs that exceed the scope of 28 U.S.C. § 1920, including "travel expenses" and "business meals." The Plaintiff does not present a legal basis for awarding the costs that exceed the scope of § 1920 in his Statement of Fees and Costs [Doc. 92] or reply [Doc. 96], and at the hearing, counsel for Mr. Grant agreed that Mr. Grant would only pursue costs allowed under § 1920.

Shaw responds [Doc. 93] that Mr. Grant's request should be significantly reduced or denied in its entirety. First, Shaw argues that Mr. Grant should not be allowed to recover fees. Shaw states that on June 24, 2011, before any of the fees requested were incurred, Shaw offered $10,000 to settle this case, and on July 20, 2011, Shaw offered $15,000.00 to settle this case. Shaw notes that these offers exceeded Mr. Grant's ultimate recovery, but Shaw concedes that these offers were offers to settle not offers of judgment. [Doc. 93 at 2-3].[3]

Next, Shaw argues that, applying the lodestar method, Mr. Grant's recovery should be reduced to reflect the relative simplicity of the case and Mr. Grant's lack of success on his claim for liquidated damages. [Doc. 93 at 5]. Shaw cites the Court to Farrar v. Hobby, 506 U.S. 103, 114 (1992), wherein the Court described the degree of success obtained as the "most critical factor" in determining reasonable attorney fees. [Doc. 93 at 6]. Shaw cites the Court to Greene v. Westwood Property Management, 2009 WL 2850866 (M.D. Tenn. 2009). In Greene, a FLSA plaintiff recovered $6,072.67 in wages and was awarded attorneys' fees in the amount of $50,000, which was a reduced award intended to reflect reasonable fees given the amount of

---

[3] Shaw cites case law from the Seventh Circuit Court of Appeals in support of its position that these settlement offers can be considered in reducing the amount of fees awarded to a prevailing party, but Shaw also notes contravening law from the Court of Appeals for the Sixth Circuit, including Dowling v. Litton Loan Servicing LP, 320 Fed. App'x 442 (6th Cir. 2009) (finding district court did not abuse its discretion in refusing to consider settlement offer that exceeded recovery in awarding attorney fees under FDCPA, RESPA).

recovery. [Doc. 93 at 8].

Shaw also argues that Mr. Grant's fee request should be reduced to account for excessive, unnecessary, and vague billing entries and to account for attorneys performing clerical work. [Doc. 93 at 10]. Shaw includes an appendix detailing its critiques of the billing entries. [Doc. 93-1], and Mr. Grant has agreed not to pursue compensation for a large portion of the time to which Shaw objects, [Doc. 96-1].

Finally, Shaw argues that Mr. Grant's request for costs does not meet the Court's standards. Shaw argues that Mr. Grant did not submit a Bill of Costs as is required under Rule 54.1 of the Local Rules for the Eastern District of Tennessee. [Doc. 93 at 1]. In addition, Shaw notes that Mr. Grant failed to provide any documentation or receipts relating to the costs. [Doc. 93 at 16]. Shaw argues that the issue of whether business meals, travel expenses, and other costs that fall outside the scope of § 1920 is the subject of debate in the Sixth Circuit and other Circuits. [Doc. 93 at 17 (citing King v. Gowdy, 268 Fed. App'x 389 (6th Cir. 2008); McDowell v City of Princeton, 2006 WL 2414513 (W.D. Ky. 2006); Riddle v. Tex-Fin, Inc., 2011 WL 1103033 (S.D. Tex. 2011))].

At the hearing, Shaw agreed at the hearing that it would be appropriate for the undersigned to include the request for costs in this Report and Recommendation to streamline the post-trial litigation. Mr. Grant also agreed to limit his request for costs to costs that fall within the categories delineated in § 1920.
6

Case 3:12-cv-00563-TAV-CCS   Document 32   Filed 11/05/13   Page 7 of 18   PageID #: 1094
Case 3:08-cv-00350-TAV-CCS   Document 107   Filed 01/30/13   Page 6 of 17   PageID #: 1024

### III. ANALYSIS

The Court will address the attorneys' fees request and request for an award of costs and expenses in turn.

### A. Attorneys' Fees Request

Under the FLSA, the court shall, "in addition to any judgment awarded to the plaintiff or the plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and the costs of the action." 29 U.S.C. § 216(b). "[A]n award of attorney fees under § 216(b) is mandatory but the amount awarded is within the discretion of the district court." United Slate Local 307 v. G & M Roofing and Sheet Metal Co., 732 F.2d 495, 501 (6th Cir.1984).

"The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." Fegley v. Higgins, 19 F.3d 1126, 1135 (6th Cir. 1994) (citing United Slate, 732 F.2d at 502)). However, such attorneys' fees provisions were "not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565-66 (1986).

The Court of Appeals for the Sixth Circuit has explained:

> Attorney's fees must be set in amount that is "reasonable," 29 U.S.C. § 216(b), and in recent times the starting point has been a "lodestar" calculation-the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate. See Adcock-Ladd, 227 F.3d at 349. That amount may then be adjusted upwards or downwards, as the district court finds necessary under the circumstances of the particular case.

Moore v. Freeman, 355 F.3d 558, 565-66 (6th Cir. 2004). There are few circumstances where the lodestar fee calculation is not adequate to attract competent counsel. See Perdue v. Kenny

A., ___ U.S. ___, 130 S.Ct. 1662, 1674 (2010) ("We conclude that there are a few such circumstances but that these circumstances are indeed 'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'").

1. Appropriate Hourly Rate

At the heart of the lodestar calculation is the reasonable hourly rate. The reasonable hourly rate "is not necessarily the exact value sought by a particular firm, but [it] is rather the market rate in the venue sufficient to encourage competent representation." Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 618 (6th Cir. 2007).

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes is the legal community within the court's territorial jurisdiction or venue. Brooks v. Invista, 2008 WL 304893, at *3 (E.D. Tenn. 2008) (citing Adcock-Ladd v. Sec'y of the Treasury, 227 F.3d 343, 349 (6th Cir. 2000)). The appropriate or reasonable hourly rate "may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required." Brooks, 2008 WL 304893, at *3 (citing Coulter v. Tennessee, 805 F.2d 146, 148 (6th Cir.1986)).

The Court of Appeals has explained this distinction well by explaining:

> The statutes use the words "reasonable" fees, not "liberal" fees. Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

Coulter v. State of Tenn., 805 F.2d 146, 149 (6th Cir. 1986); see also Lamar Adver. Co. v. Charter Township of Van Buren, 178 Fed. App'x 498 (6th Cir. 2006) ("Even if it would be

8

reasonable to award [plaintiff] $370 per hour, the record supports the district court's conclusion that $200 per hour is sufficient to encourage competent lawyers in the relevant community to undertake legal representation").

In this case, the Court finds that the rates requested by the Plaintiff exceed the amount necessary to cause competent legal counsel to perform the work required. As an initial matter, the Court finds that the hourly rate of $440 charged by Mr. Estes far exceeds the hourly rate necessary to attract competent counsel to take such cases in Knoxville, Tennessee. The Court finds, however, that the weighted average of the hours expended is more reasonable and only exceeds the reasonable hourly rate by a degree.

In <u>Brooks v. Invista</u>, 2008 WL 304893 (E.D. Tenn. Jan. 30, 2008), the Honorable Curtis L. Collier, Chief Judge of the Eastern District of Tennessee, adopted the Report and Recommendation of Magistrate Judge Susan Lee. In <u>Brooks</u>, the court found that rates ranging from $220 to $285 exceeded the rates necessary to encourage competent lawyers to undertake cases in the Eastern District of Tennessee—in that case, an employment discrimination case. <u>Id.</u> at *5. The court indicated that the rates required to attract counsel in the Eastern District of Tennessee were probably lower than the rates prevailing in Nashville, Tennessee. <u>Id.</u> at *6. In addition, the court noted that the party requesting compensation for attorneys based in Nashville had not demonstrated any reason why it was necessary to obtain counsel from Nashville. <u>Id.</u> at *5. The court reduced the requested rates by 10% to an average of $229.50 for work performed in 2006 to 2007.

The rate endorsed in <u>Brooks</u>, when adjusted for 2% inflation for 2008, 2009, 2010, and 2011, yields a rate of $248.42, which is just 4% less than the weighted average rate charged in the instant matter. The undersigned finds that a nominal reduction of 4% of the initial request

9

will reduce the hourly rate charged to a reasonable hourly rate as required by applicable case law. Thus, the undersigned will **RECOMMEND** reducing the requested $98,074.00 by 4% ($3,922.96) to **$94,151.04**, in order to align the hourly fees requested with the reasonable fee in this District.

The undersigned finds that this reduction is appropriate because Mr. Grant has failed to show that either inflation or a shortage of attorneys in the Eastern District of Tennessee has produced inflation in excess of 2%.[4] In addition, he has failed to show any distinction between FLSA work and other cases that apply statutory attorneys' fees provisions, so as to make case law like Brooks inapplicable or incongruent to the instant case. Finally, he has failed to show that there is a shortage of attorneys available to perform FLSA work in Knoxville, Tennessee, so as to necessitate a higher amount of compensation to attract attorneys from Nashville, Tennessee, to perform such work.[5] Accordingly, the Court finds that a reduction in the award to reflect a more appropriate hourly compensation is necessary.

---

[4] This figure is in-line with this Court's previous calculations, adjusted for inflation. See, e.g., Brooks, 2008 WL 304893; Michael v. Windsor Gardens, 2005 WL 1320189 (E.D. Tenn. June 2, 2005) (finding $250 for senior attorneys and $150 for junior attorneys to be a reasonable rate for work performed in 2004 to 2005 on an employment discrimination matter); Trentham v. Hidden Mountain Resorts, Case No. 3:08-CV-23 (E.D. Tenn. Sept. 2, 2010) (Guyton, M.J.) (recommending compensation between $240-260 for the most experienced and well-respected practitioners in Knoxville); Loyless v. Oliveira, 2012 WL 775084, 2 (E. D. Tenn. Feb. 17, 2012) (Lee, M.J.) (finding $300 to be a relatively high hourly rate for the Chattanooga legal market but approving the fee in light of no objections); McKay v. Reliance Standard Life Ins. Co., 654 F.Supp.2d 731, 746 (E.D.Tenn.2009) (approving a $250 hourly rate in an ERISA case).

[5] Mr. Grant filed a supplemental brief discussing his attorneys' professional accomplishments in support of the requested fee. For example, Mr. Grant submits that Mr. Estes "is a leading authority in the Fair Labor Standards Act ('FLSA') and has recovered more than $162,000,000.00 for his clients in FLSA plaintiffs' cases." [Doc. 105 at 4]. Further, Mr. Grant submits, "Mr. Bigelow has experience first-chairing FLSA and other trials in federal court and has argued before the Sixth Circuit Court of Appeals and the Tennessee Court of Appeals." [Doc. 105 at 5]. None of this information goes to whether the reasonable hourly rate "exceed[s] the amount necessary to cause competent legal counsel to perform the work required," Brooks, 2008 WL 304893, at *3, nor does it undermine the Court's above findings. Shaw maintains that: "The fact that Plaintiff felt compelled to provide the Court with an unsolicited brief highlights what the record already makes clear — his fee application is not defensible." [Doc. 100 at 1].

10

Case 3:12-cv-00563-TAV-CCS   Document 32-3   Filed 11/05/13   Page 11 of 13   PageID #: 200
Case 3:08-cv-00350-TAV-CCS   Document 107   Filed 11/30/13   Page 10 of 17   PageID #: 1028

2. <u>Number of Hours Expended</u>

The Court turns now to the second component of the lodestar analysis: the hours reasonably expended.

a. *Excessive, Redundant, or Otherwise Unnecessary Hours*

As a rule, "[h]ours which are 'excessive, redundant, or otherwise unnecessary,' are not reasonably expended." <u>Brooks</u>, 2008 WL 304893, at *4 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)). In addition, "[f]ee-shifting statutes do not generally permit courts to award fees for clerical work," <u>Jablonski v. Portfolio Recovery Assoc.</u>, 2012 WL 1552462, at *4 (N.D. Ohio Apr. 30, 2012); <u>Green Party of Tenn. v. Hargett</u>, 2012 WL 5511224, at *2 (M.D. Tenn. 2012), and courts "should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism," <u>Diffenderfer v. Gomez-Colon</u>, 606 F.Supp.2d 222, 228 (D.P.R. 2009) (quoting <u>Lipsett v. Blanco</u>, 975 F.2d 934, 938 (1st Cir.1992)).

The Court finds that the billing entries submitted in this case demonstrate excessive billing for some components of the litigation. For example, counsel for Mr. Grant expended 27.9 hours[6] – *i.e.* over three standard working days – researching and drafting Mr. Grant's Proposed Findings of Fact and Conclusion of Law for this case. The Proposed Findings of Fact and Conclusion of Law were just over eleven pages in length. As another example, counsel for Mr. Grant spent 14.2 – *i.e.* just short of two standard working days – examining and researching Defendant's Proposed Findings of Fact and Conclusions of Law.[7] This work was billed before the Defendant's Proposed Findings of Fact and Conclusions of Law, which were twelve pages in length, were filed on August 1, 2011. [Doc. 62].

---

[6] 4.7+5.9+8.9+8.4=27.9 hours between July 23, and July 25, 2011.

[7] 0.7+3.3+3.3+6.9=14.2 hours between July 25, and July 30, 2011.

11

The Court finds that the greatest example of counsel's excess is the trial preparation. Not including the pretrial conference, counsel for Mr. Grant spent 92.4[8] hours preparing for trial. The trial in this matter took place from 9:00 a.m. to 12:25 p.m. and from 2:00 p.m. to 4:00 p.m. on August 8, 2011. The trial lasted approximately 5.5 hours. The Court finds that the 92.4 hours expended in preparing for this trial was excessive. The Court recognizes that Mr. Grant has agreed to reduce some of these entries, see, e.g., Doc. 96-1 at 6 agreeing to reduce 4 hours for trial preparation. The Court, however, finds that the hours submitted to the Court demonstrate an excessive expenditure of time on these issues and further reduction is appropriate.

Counsel for Mr. Grant argues that the extensive trial preparation was somehow made lengthier by the abbreviated pretrial litigation schedule in this case. While the Court has considered this point, it is unconvincing for two reasons. First, counsel has not demonstrated how the expedited schedule resulted in or necessitated any additional hours. Counsel, for example, has not argued that additional time reviewing notes during trial preparation was required because transcripts were not immediately available. Second, it can be argued that the abbreviated pretrial schedule lessened the need to expend attorney hours because depositions and discovery were acquired so close to trial that counsel did not need to reacquaint themselves with the material. The Court finds that Mr. Grant has not demonstrated how the abbreviated schedule required additional time being spent on pretrial preparation.

---

[8] 4.5+8.9+0.2+2.0+2.2+2.9+5.9+4.0+15+4+8+17.7+13=92.4. The Court would note that in addition a paralegal expended 4.1 hours assisting with preparations, labeling exhibits, etc. This figure is a conservative estimate, because the Court did not include various miscellaneous tasks – e.g. reviewing witness lists, discussing pretrial orders – in its calculation, nor did the Court include an entry by Mr. Bigelow for 19.5 hours on August 7, 2011, spent on: travel, meetings, dinner with client, finalizing opening and closing statements, and trial preparation generally.

12

Case 3:12-cv-00563-TAV-CCS   Document 32-3   Filed 11/05/13   Page 12 of 13   PageID #: 292
Case 3:08-cv-00350-TAV-CCS   Document 107   Filed 01/30/13   Page 12 of 13   PageID #: 1930

Equally troubling is the amount of time expended in preparation of Mr. Grant's post-trial brief. It appears to the Court that Mr. Grant initially requested compensation for 118.4[9] hours allegedly expended preparing the post-trial brief in this matter.[10] The post-trial brief [Doc. 80] was thirty-two (32) pages in length and borrowed from Mr. Grant's previous submitted Proposed Findings of Fact and Conclusion of Law [Doc. 56]. The Court recognizes that Mr. Grant has agreed to reduce some of these entries, see, e.g., Doc. 96-1 at 9 agreeing to reduce 43.7 hours for trial preparation. The Court, however, finds that the hours submitted to the Court demonstrate an excessive expenditure of time on these issues and further reduction is appropriate.

The undersigned will **RECOMMEND** an additional reduction of 10% to address these excessive entries. Thus, reducing $94,151.04 by 10% ($9,415.10) to **$84,735.94**.

b.     *Documentation and Billing Entries*

It is the movant's burden to demonstrate their entitlement to fees. Perdue, 130 S.Ct. at 1674. "The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." United Slate, 732 F.2d at 502, n.2; see Imwalle v. Reliance Med. Prods., 515 F.3d 531, 552 (6th Cir.2008). While the practice of block billing is generally discouraged, block billing "does not require a court to reduce a fee award." Oakley v. City of Memphis, 2012 WL 2682755, *3 (W.D. Tenn. June 14, 2012). At the same time, "[c]ourts unquestionably have authority to downwardly adjust fee claims because of block billing and vague entries." Oakley, 2012 WL 2682755 at *3 (quoting Swapalease, Inc. v. Sublease Exchange.com, Inc., 2009 WL 1119591, at *2 (S.D. Ohio Apr. 27,

---

[9] 0.2+0.7+1.8+1.9+3.9+4.8+5+1+1.7+2.2+4.2+2+4.5+0.5+3+4.4+1.9+3.5+3.7+5.5+7+7+8+7.5+8+3.8+9.7+7+0.4+3.6=118.4

[10] Again, the Court's figure is a low-end estimate of this figure, as Mr. Grant's counsel posits that 131.1 hours were requested for post-trial briefing.

13

Case 3:08-cv-00350-TAV-CCS   Document 107   Filed 01/30/13   Page 13 of 17   PageID #: 2031

2009)). When confronted with a request for the award of attorney's fees in the face of inadequate billing records, courts in the Sixth Circuit often apply across-the-board fee reductions. Heath v. Metro. Life Ins. Co., 2011 WL 4005409, at *10 (M.D. Tenn. Sept. 8, 2011); Helfman v. GE Group Life Assurance Co., 2011 WL 1464678 (E.D. Mich. April 18, 2011).

In this case, the Defendant argues that many of the entries submitted by Mr. Grant constitute block billings. The Court has reviewed the Defendant's objections. In response to many of these objections, Mr. Grant has now agreed to discount these entries by one-third to address any vagueness or lack of distinction produced by the block billing. The Court has re-reviewed Mr. Grant's billing entries, and the Court finds no further discounts for vague entries or block billing are appropriate.

However, to the extent tasks that are discounted are grouped in block billing entries with other tasks the Court will discount the entry and will not attempt to separate each task out where counsel has declined to do so, unless the division is obvious from the context of the entry. That is to say, to the extent there was or is block billing in entries, this practice will work to Mr. Grant's detriment rather than his advantage in the Court's analysis.

3.  Compensation for Travel Time

Courts in this Circuit regularly reduce travel compensation to fifty-percent of the reasonable hourly rate for counsel. See Gratz v. Bollinger, 353 F.Supp.2d 929, 943 (E.D. Mich. 2005); Pirolozzi v. Stanbro, 2009 WL 3624919, 6 (N.D. Ohio 2009). Such reductions are made where the movant has not demonstrated that out-of-town counsel is necessary and to account for the fact that counsel cannot afford the litigation their full attention while they are traveling.

14

The Court finds that a reduction in the rate of compensation for travel time is appropriate in this case. Approximately 51.4[11] – or 10% – of the 488.8 hours originally submitted were compensation for travel time billed at counsel's full hourly rates. The Court recognizes that Mr. Grant has agreed to reduce some of these entries, see, e.g., Doc. 96-1 at 7 agreeing to reduce 16 hours for trial preparation and travel by 1.3 hours. The Court, however, finds that Mr. Grant has been credited for this agreed reduction through the Court's finding above that the request would not be and further reduced for block billing. The Court finds that a reduction to specifically address the billing-for-traveling issue is appropriate. The Court finds that reducing the total award by 5% will adequately discount for the full-billing of the travel time entries that constitute approximately 10% of the original time entries.

Accordingly, the $84,735.94 will be reduced by an additional 5% ($4,236.80) to **$80,499.14.**

**B.    Costs and Expenses Incurred Pursuant to 28 U.S.C. § 1920**

Mr. Grant initially sought $8,251.38 in costs. This request included costs like copies and transcripts of depositions, which are generally submitted to the Clerk of Court, pursuant to 28 U.S.C. § 1920. As noted above, the initial request also included compensation for costs that exceed the scope of 28 U.S.C. § 1920, including "travel expenses" and "business meals." Counsel for Mr. Grant agreed at the hearing before the undersigned to limit the costs requested to those compensable under § 1920.

Shaw initially argued that Mr. Grant did not submit a Bill of Costs as is required under Rule 54.1 of the Local Rules for the Eastern District of Tennessee. [Doc. 93 at 1]. Shaw agreed at the hearing that it would be appropriate for the undersigned to include the request for costs in

---

[11] 4.4+4.4+3.2+3.2+6+7.7+4.7+3 (portion of JHJ entry 8/7/11)+3 (portion of RCB entry on 8/7/11)+6+5.8=51.4

15

this Report and Recommendation to streamline the post-trial litigation. At the hearing, Shaw did not dispute the reasonableness of the costs under § 1920.

Rule 54(d) of the Federal Rules of Civil Procedure directs that costs, other than attorney's fees should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1). Costs recoverable under Rule 54(d) are specified in 28 U.S.C. § 1920. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987) ("Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)."). Pursuant to 28 U.S.C. § 1920, a judge or clerk of any court of the United States may tax the following costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) [Certain docket fees; and]
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services . . . .

In the Eastern District of Tennessee, the Clerk of Court is charged with assessing these costs after a Bill of Costs has been properly filed. See E.D. Tenn. L.R. 54.1. However, based upon the agreement stated above the undersigned will address the issue at this juncture.

The undersigned **RECOMMENDS** that Mr. Grant be awarded **$5,706.01**[12] representing the costs incurred in this litigation pursuant to 28 U.S.C. § 1920. The undersigned finds that

---

[12] $427.90+4.40+0.40+2.00+29.60+1.40+18.80+0.80+6.40+100.00+739.72+9.80+7.40+35.00+0.80+35.60+385.19+138.61+149.21+1,190.50+421.32+1,740.86+8.80+266.75+0.20-15.45=$5706.01

16

these costs are reasonable and fall within the narrowed scope of review agreed upon by the parties.

IV.     CONCLUSION

The undersigned thus **RECOMMENDS** that the Plaintiff's (Motion for) and Statement of Fees and Costs **[Doc. 92]** be **GRANTED IN PART** and **DENIED IN PART**. The undersigned **RECOMMENDS** that, consistent with the deductions above, Mr. Grant be awarded **$80,499.14**, representing the attorneys' fees and **$5,706.01** in costs for a total award of **$86,205.15**.

Respectfully Submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

17

Case 3:12-cv-00563-TAV-CCS   Document 32-3   Filed 11/05/13   Page 18 of 18   PageID #: 2075
Case 3:08-cv-00350-TAV-CCS   Document 107   Filed 01/30/13   Page 17 of 17   PageID #: 1935